IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

TED M. ROSENBERG et al.,

             Plaintiffs,

    v.

JCA ASSOCIATES, INC. et al.

          Defendants.

HONORABLE JEROME B. SIMANDLE

CIVIL NO. 03-0274 (JBS)

**OPINION**

APPEARANCES:

Gregg L. Zeff, Esq.
Michael C. Ksiazek, Esq.
FROST & ZEFF
430 Route 70 West
Cherry Hill, New Jersey 08002
    Attorneys for Plaintiffs

Lawrence W. Lindsay, Esq.
Justin T. Loughry, Esq.
LOUGHRY & LINDSAY
714 East Main Street, Suite 1-A
Moorestown, New Jersey 08057
    Attorneys for Defendant JCA Associates, Inc.

Jeffrey Zucker, Esq.
SUFRIN, ZUCKER, STEINBERG, WALLER & WIXTED, PC
Parkade Building
519 Federal Street, Suite 503
Camden, New Jersey 08103
    Attorney for Defendant Mark Neisser

Morris W. Pinsky, Esq.
318 Haddon Avenue
Westmont, New Jersey 08108
    Attorney for Defendant Henry Chudzinski

William M. Tambussi, Esq.
William F. Cook, Esq.
BROWN & CONNERY, LLP
360 Haddon Avenue
P.O. Box 539

Westmont, New Jersey 08108
        Attorneys for Defendant George Norcross, III

Mark W. Cantanzaro, Esq.
Blason IV - Suite 208
513 S. Lenola Road
Moorestown, New Jersey 08057
        Attorney for Defendant R. Louis Gallagher, II

I.    BACKGROUND. . . . . . . . . . . . . . . . . . . . . 6

      A.    The 2000 Election of the BCDC Chairman. . . . . . . 8

      B.    The Events After June 2000 BCDC Election. . . . . . 10

            1.    Rosenberg's Position as Solicitor of Palmyra.. 12
            2.    Gural's Employment at JCA Associates.. . . . . 12

II.   PROCEDURAL HISTORY. . . . . . . . . . . . . . . . . 14

III.  DEFENDANTS' MOTION FOR SUMMARY JUDGMENT. . . . . . . . . 17

      A.    Summary Judgment Standard of Review. . . . . . . . 17

      B.    Preliminary Matters. . . . . . . . . . . . . . . 18

            1.    Plaintiffs' Rule 56(f) Affidavit.. . . . . . . 18
            2.    Plaintiffs' Failure to File a Statement of
                  Material Facts under Local Civil Rule 56.1.. . 25
            3.    Whether Plaintiff Gural's Claims against
                  Defendants Norcross and Gallagher are Barred by
                  the New Jersey Entire Controversy Doctrine.. . 27

      C.    Plaintiffs' RICO Claims. . . . . . . . . . . . . 30

            1.    Plaintiffs' have Failed to Demonstrate Harm to
                  their Business or Property.. . . . . . . . . 31
            2.    Defendants are Entitled to Summary Judgment as to
                  Plaintiffs' Federal RICO Claims. . . . . . . 36

      D.    Remaining State Law Claims Brought by Both
            Plaintiffs. . . . . . . . . . . . . . . . . . 36

            1.    New Jersey RICO. . . . . . . . . . . . . . 38
            2.    Tortious Interference with Business Relations. 39
                  a.    Political Patronage Positions . . . . . . .41
                  b.    Gural's Employment at JCA Associates . . . 43

                                    2

          3.    Civil Conspiracy Claims. . . . . . . . . . .   45
          4.    Gural's Claims for Intentional Infliction of
                Emotional Distress.. . . . . . . . . . . . .   46
          5.    Eleanor Gural's Claims for Loss of Consortium
                . . . . . . . . . . . . . . . . . . . . . . .   48

IV.   DEFENDANTS' MOTION FOR ATTORNEY'S FEES AND SANCTION. . .   49

      A.    Rule 11 Motion Against Plaintiff Gural's Counsel. .   52

      B.    Rule 11 Motion Against Plaintiff Rosenberg. . . . .   53

V.    CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . .   54

**SIMANDLE, District Judge:**

    This matter involves allegations of corruption, extortion

and retaliation for political disloyalty surrounding the

Burlington County Democratic Party and the Burlington County

Democratic Committee elections in 2000.  Presently before the

Court are motions filed by defendants Mark Neisser, Henry

Chudzinski, George Norcross, III, R. Louis Gallagher, II, and JCA

Associates, Inc. (collectively, the "Defendants") (1) for summary

judgment against plaintiffs Ted M. Rosenberg and against John J.

Gural, Jr. and Eleanor Gural (collectively, the "Plaintiffs");

(2) to relax the briefing page limitations imposed by Local Civil

Rule 7.2(b) for Defendants' motions for summary judgment; and (3)

for fees and sanctions pursuant to Rule 11, Fed. R. Civ. P.[1]

_____

    [1] Defendant Norcross has filed separate motions for summary
judgment directed at Plaintiffs Rosenberg and John and Eleanor
Gural [Docket Item Nos. 122 and 123, respectively.] The other
four defendants (Neisser, Gallagher, Chudzinski and JCA
Associates, Inc.) have each joined in Defendant Norcross' motions
and relied on his briefing papers. [Docket Item Nos. 125, 126,

The central arguments made by Defendants in their motions
for summary judgment are (1) that Plaintiffs' claims under the
Federal Racketeer Influenced and Corrupt Organizations Act, 18
U.S.C. § 1962, et seq., ("RICO") are without merit as Plaintiffs
cannot prove damages, causation or that the Defendants did any
predicate acts to trigger a RICO claim and (2) that the Court
will lack jurisdiction to hear state law claims after dismissing
the federal RICO action or, in the alternative, that Plaintiffs'
claims under state law are without merit.  Defendants also argue
that, because Plaintiff Gural brought a similar claim against
Defendants JCA Associates, Chudzinski and Neisser in 2001 under
New Jersey's CEPA, Gural's claims against Defendants Norcross and
Gallagher are now barred under the New Jersey Entire Controversy

---

127, 129, 130, and 132.] The Court has also received and will
consider a February 22, 2006 letter from counsel for JCA
Associates in support of JCA Associate's motion for summary
judgment.  (Letter from Justin Loughry, Esq., dated
2/22/06.)[Docket Item No. 156.]

Defendant Norcross also filed a motion for fees and
sanctions on December 22, 2005. [Docket Item No. 134.]  The other
four defendants (Neisser, Gallagher, Chudzinski and JCA
Associates, Inc.) have each joined in Defendant Norcross' motion
for fees and sanctions and have again relied on his briefing
papers. [Docket Item Nos. 135, 136, 138 and 141.]

Finally, Defendant Norcross filed a motion to bar
consideration of any opposition filed in response to Defendant
Norcross' motion for summary judgment. [Docket Item No. 143.]
This motion was predicated on the belief that Plaintiffs had
failed to file timely opposition.  Because Plaintiffs did file
opposition in a timely manner, Defendant Norcross' motion to bar
consideration of opposition will be denied.

Doctrine ("NJECD").  While Plaintiffs do address some of the arguments raised in Defendants' motions, Plaintiffs' central argument is that summary judgment is premature at this stage of the litigation because discovery is not yet complete and Plaintiffs request that this Court allow them time for additional discovery under Rule 56(f), Fed. R. Civ. P.

At the outset, the Court will grant Defendants' motion to relax Rule 7.2(b), L. Civ. R. and allow Defendants' briefs in support of their respective motions for summary judgment to exceed the 40 page maximum.  Defendants' motions address a number of complex issues that require extensive briefing.  In addition, Defendant Norcross' motions speak for all five Defendants.  As such, relaxation of Rule 7.2(b) is warranted.

With respect to Defendants' motions for summary judgment, for the reasons expressed below, this Court will grant Defendants' motions with respect to the federal RICO claims brought by both Plaintiffs (Counts II-V and X-XIII of the First Amended Complaint ("FAC")) because neither Rosenberg nor Gural have demonstrated that they have suffered any harm to their "business or property" as a Plaintiff is required to show under the federal RICO laws.  In addition, the Court shall (1) retain jurisdiction over Plaintiffs' additional state law claims; (2) grant Defendants' summary judgment motions as to Rosenberg's and Gural's state law claims of New Jersey RICO (Counts VII and XV)

and civil conspiracy claims (Counts VIII and XVII) and
Rosenberg's claim of tortious interference with contract and
business relationships (Counts I); and (3) grant Defendants'
motion as to John Gural's claim of intentional infliction of
emotional distress (Count XVI) and Eleanor Gural's claim of loss
of consortium (Count XVIII.)   The Court, however, will deny the
motions for summary judgment of Defendants Norcross and Gallagher
with respect to Gural's tortious interference with contract and
business relationships (Count IX).  Furthermore, this Court
rejects Plaintiffs' request for a continuance in order to allow
additional discovery under Rule 56(f) because Plaintiffs have
failed to demonstrate how additional discovery (e.g., depositions
of Defendants) would alter the outcome of Defendants' motions for
summary judgment, and why discovery was not concluded within the
lengthy period available to have done so.  Of course, discovery
will proceed with respect to Gural's tortious interference claim,
the sole remaining claim in this case.

Finally, this Court will deny Defendants' motion for Rule 11
sanctions against Plaintiff Gural's counsel and Plaintiff
Rosenberg.

## I.   BACKGROUND

Plaintiff, Ted M. Rosenberg has been an active Democrat
since the late 1980s having represented numerous municipalities
as either a prosecutor and solicitor.  (First Amended Compl.

"FAC" ¶ 50 and Def.'s Br. at Ex. A, Deposition Transcript of Ted.
M. Rosenberg, at 496-500.)   In 1999, Rosenberg was the solicitor
for the Borough of Palmyra and Chairman of the Democratic Party
in Medford Township, Burlington County in 1999.   (FAC ¶¶ 5, 15;
Rosenberg Dep. Tr. at 342, Def.'s Br. at Ex. A.6.)   During this
time, Plaintiff John J. Gural, Jr., an employee of defendant JCA
Associates, Inc.[2] and a councilman of the Borough of Palmyra,
asked Rosenberg to consider running for the Chairmanship of the
Burlington County Democratic Committee (the "BCDC".)[3]   (FAC ¶¶ 6,
16.)   Plaintiffs Rosenberg and Gural say that they then met with
Defendants Mark Neisser and Henry Chudzinski, both shareholders
and principals of JCA Associates, to discuss Rosenberg's
candidacy.[4]   Gural says that Neisser told him that JCA would
support Rosenberg provided that Defendant Norcross approved.[5]
(Id. ¶19.)   Plaintiffs allege that JCA maintained a close
business relationship with Norcross, with JCA making substantial
political donations to political candidates at Norcross' request

---

[2]   JCA Associates is an engineering firm located in
Moorestown, Burlington County, New Jersey.

[3]   Approximately 500-600 members of the Burlington County
Democratic Committee vote for the position of chairman.
(Rosenberg Dep. Tr. at 651-52.)

[4]   JCA Associates provides services to a number of South
Jersey municipalities and public agencies.

[5]   Norcross is the former Chairman of the Camden Democratic
Committee and the CEO and President of Commerce National
Insurance Services, Inc.

in exchange for municipal engineering business from governmental entities with political ties to Norcross.  (Id. ¶¶ 20-22.) Through this arrangement, Plaintiffs allege that Defendant Norcross controlled the activities of JCA.

### A.   The 2000 Election of the BCDC Chairman

In January 2000, when Rosenberg was seeking to run for office, there was also a Democratic primary United States Senate race underway involving Jon Corzine (presently New Jersey's Governor) and former New Jersey Governor James Florio as the two main Democratic contenders.  (Id. ¶24.)  Rosenberg says that Norcross asked him to support Florio, but that he refused. Rosenberg alleges that his refusal to support Florio prompted Neisser and Chudzinski to inform Gural that Norcross would probably not allow JCA Associates to support Rosenberg's candidacy for chairman of the BCDC.  (Id. ¶¶ 25, 26.)  By February 2000, Neisser and Chudzinski informed Gural that neither they nor JCA Associates would support Rosenberg for the chairman position.  (Id. ¶27.)

Despite this lack of support, on February 14, 2000, Rosenberg publicly declared his candidacy for BCDC Chairman.[6] (Id. ¶ 28; Rosenberg Dep. Tr. at 524.)  Gural alleges that Norcross conveyed to him, through Neisser and Chudzinski, that

---

[6]  Before deciding to run for the chairman's position, Rosenberg was not active in Burlington County politics. (Rosenberg Dep. Tr. at 524-25, 651.)

Gural should not support Rosenberg. (<u>Id.</u> ¶ 29-30.)  Despite this warning, Gural supported Rosenberg.  (<u>Id.</u> ¶ 31.)  On March 2, 2000, Gural says that he informed Neisser and Chudzinski that his local Democratic organization intended to publicly endorse Rosenberg's candidacy.  (<u>Id.</u> ¶32.)  In response, Chudzinski allegedly indicated to Gural that Gural's job would be in jeopardy if he did so.  (<u>Id.</u>)  Gural then contacted Carol Riener, Chairperson of the Palmyra Democratic Committee, and informed her that his job was threatened if he openly endorsed Rosenberg, and Gural began to tape record the conversations he had with Neisser, Chudzinski, Norcross and Rosenberg. (<u>Id.</u> ¶¶ 36-38).  Later in March 2000, Defendant R. Louis Gallagher, II announced that he would run opposite Rosenberg for the BCDC Chairman position. (<u>Id.</u> ¶ 33.)

From his deposition testimony, it appears that from the start, Rosenberg's campaign was run less than efficiently. (Rosenberg Dep. Tr. at 652-55 and 662-67.)  Rosenberg admits that he never formed a formal committee to support his election efforts, kept track of campaign donations, or obtained a complete list of names and phone numbers of the 500 to 600 individuals who would vote for the BCDC chairmanship.  (<u>Id.</u>)  Rosenberg did some campaigning, however, delivering campaign literature to approximately 550 elected county committee persons in Burlington County, which included a flow chart that portrayed Norcross in a

negative light.[7] (Rosenberg County Chairman Campaign Literature, Def.'s Br. at Ex. F.)

Gural alleges that immediately after Rosenberg distributed the flow chart, Defendants Neisser and Chudzinski again threatened him for his public support of Rosenberg.  (Id. ¶ 42.) Specifically, on June 6, 2000, Neisser and Chudzinski repeatedly suggested that he should support the candidacy of Gallagher and requested that he sign a letter supporting Gallagher. (Id. ¶¶ 44-46.)  Gural refused.  (Id.)  In addition, Gural was told by Neisser that if he did not ensure that Palmyra's Democratic County Committee persons would be voting for Gallagher, his job with JCA would be in jeopardy.  (Id. ¶ 47.)  Gural claims that he did, in fact, advise several of his Palmyra County committee persons to support Gallagher because he feared that he would lose his job if he did not.  (Id. ¶ 48.)  Rosenberg lost the election to Gallagher by a vote of 247 to 220.  (Id. ¶ 50.)

**B.   The Events After June 2000 BCDC Election**

Plaintiffs say that Norcross then directed his efforts toward having Rosenberg removed from his position as solicitor of

---

[7] The flow chart implied that Norcross (in conjunction with Gallagher and JCA) used his influence with the Burlington County Democratic Party to grow his insurance and banking business, that he had obtained business from publicly controlled entities in Burlington County, and had been instrumental in awarding millions of dollars of "no bid" contracts to various professional firms. (Id. ¶¶ 38-40; see also Def.'s Br. at Ex. F.)

the Borough of Palmyra.  They allege that he had Neisser,
Chudzinski and others pressure Gural, as councilman in Palmyra,
to arrange for Rosenberg's termination and threaten that he would
lose his employment with JCA if he did not comply.  (Id. ¶¶ 18,
51-52, 59, 68-69, 81.)  Defendants dispute this, citing a
February 9, 2001 memorandum from Neisser to Gural stating that
Gural's employment at JCA was in no way contingent upon Gural's
position regarding Rosenberg's reappointment.  (Memorandum from
Neisser to Gural, dated 2/9/01, Def.'s Br. at Ex. JJ.)

    In January 2001, Gural says that he and Neisser met with
Norcross and that Norcross told him that he hated Rosenberg, that
he wanted to ruin his career, and that he wanted him fired as the
solicitor of Palmyra.  (Id. ¶¶ 90-95; Transcript of 1/31/01 taped
conversation between Norcross, Gural and Neisser, Def.'s Br. at
EE.)  Gural tape-recorded the conversation.  (Tr. of 1/31/01
meeting; Certification of John J. Gural ¶ 25-27, Pl.'s Opp. Br.
at Ex. A.)  According to the transcript of the recorded
conversation, Gural told Norcross that he wanted to be appointed
to the Burlington County Board of Elections in exchange for
terminating Rosenberg and that Norcross said that he would talk
to Gallagher about getting Gural the position.  (Id. at 46-48.)[8]

---

    [8] Gural alleged (and a transcript of his recordings confirm)
that Gallagher later told him that the Board of Elections
position had already been promised to another person, but that
Neisser and Chudzinski continued to talk to Gural about other
forms of compensation, including payment from JCA, in exchange

### 1. Rosenberg's Position as Solicitor of Palmyra

Rosenberg acknowledged that his position as solicitor of Palmyra was an annual appointment and that he could be replaced on an annual basis.  (Rosenberg Dep. Tr. at 342.)  The appointment of borough solicitor is made by the mayor and borough council of Palmyra and thus, Rosenberg understood that there is no guarantee that he would be appointed as solicitor in a given year.  (Id. at 342-44.)  Despite alleged attempts by Norcross and the Defendants to have Rosenberg fired as the borough solicitor, on February 10, 2001, the Palmyra Borough Council unanimously approved Rosenberg as solicitor.  Gural abstained from the vote.  (Id. ¶109.)

### 2.   Gural's Employment at JCA Associates

After Rosenberg was reappointed as solicitor of Palmyra, Gural alleges that the Defendants conspired to harm both his business and political careers.  First, Gural alleges that he was constructively discharged from employment at JCA in October of 2001 and that this action stemmed directly from his failure to prevent the reappointment of Rosenberg as solicitor to Palmyra.  (Id. at 11, 183, 188.)  After his discharge, Gural alleges that he was unable to find employment in South Jersey as a political consultant or project manager.  (Id. at ¶ 202.)  Defendants point

---

for his efforts in attempting to terminate Rosenberg's position as solicitor of Palmyra.  (Id. ¶¶ 98-100.)

out, however, that in 2002, Gural earned $60,000 ($15,000 more than his yearly salary at JCA Associates) at Stanker and Galetto, a general contractor based in Vineland, New Jersey. (Deposition Transcript of John Gural at 75-76; Def.'s Br. at Ex. G.)

In June of 2001, Gural filed a civil action in Superior Court of New Jersey under the New Jersey Conscientious Employee Protection Act ("CEPA") naming JCA, Neisser and Chudzinski as Defendants and claiming that Neisser and Chudzinski retaliated against Gural for supporting Rosenberg's campaign for BCDC Chairman's position in early 2000 and his failure to prevent Rosenberg's reappointment as solicitor to Palmyra.) (Gural v. JCA Associates, Def.'s Br. at LL.) Defendant Norcross was not named as a defendant in the action. The matter was settled in late 2001 with Gural being paid $132,000 as part of the settlement. (Gural Dep. Tr. at 30-32, Def's Br. at Ex. LL.)

Second, Gural alleges that Defendants took adverse action against him politically. In 2002, while running for Burlington County freeholder, Gural alleges that Defendants directed in excess of $50,000 to his political opponents in order to defeat him in the primary. (Id. at ¶ 209; Gural Cert. ¶ 16, 17; Pl.'s Opp. Br. at Ex. A.) In 2003, Gural ran for Mayor of Palmyra. (Id. at ¶ 210.) Gural claims that a number of individuals he approached for political donations refused, fearing retaliation from Norcross. (Gural Cert. ¶ 4, 6, 22.) Among them was Pennoni

Associates, an engineering firm who allegedly stated that a $500,000 contract that Pennoni had with the New Jersey Department of Transportation and Palmyra would be revoked.  Gural also contends that Defendants retaliated against his political allies (including Robert Stewart, CPA who was fired as auditor of Township of Magnolia) and shut him out of all county political events and fund raisers.  (Id. at ¶ 8,9.)  Despite the alleged actions on the part of Defendants to hurt Gural's political career, Gural was elected mayor of Palmyra in 2004.[9]

## II.   **PROCEDURAL HISTORY**

On January 21, 2003, Plaintiffs filed an eighteen count Complaint against the four individual Defendants and JCA Associates, Inc.  Soon after, Defendants moved to dismiss.  On

---

[9]  Norcross includes a lengthy discussion in his brief in support of his motion and its Statement of Material Facts that are irrelevant to the pending matter.  Specifically, Defendants have included a lengthy description of Rosenberg's mental health and the head injuries he sustained in a 1996 car accident. Defendants also discuss Rosenberg's political patronage appointments (where he served as solicitor or prosecutor for a municipality or government organization).  Third, Defendants include a lengthy discussion regarding Gural's financial difficulties including a number of tax and real estate judgments (Def.'s Br. at Ex. G, H and K), liens (id. at N.), and loan judgments filed against him in New Jersey and Pennsylvania. (Id. at H and L.)  Finally, the Statement of Material Facts includes a large section regarding Rosenberg's dealings with the New Jersey Division of Criminal Justice which was investigating certain actions of Norcross.  While some of these facts were raised presumably to show that Rosenberg and Gural's political careers suffered as a result of "self-inflicted wounds" (as counsel for Norcross stated at oral argument), none of these facts are particularly relevant to the present matter before the Court.

December 31, 2003, this Court issued an opinion denying
Defendants' motion and required Plaintiffs to provide greater
specificity on their RICO claims.  See Rosenberg v. JCA
Associates, 03-274, slip. op. at 20 (December 31, 2003.)
Plaintiff filed a First Amended Complaint ("FAC") and a RICO Case
Statement on January 30, 2004.

Plaintiffs' FAC asserts the following counts as to Rosenberg
and Gural, respectively: tortious interference with contract and
business relationships (Counts I and IX); extortion in violation
of RICO, 18 U.S.C. § 1962(b), (Counts II and X); bribery in
violation of RICO, 18 U.S.C. § 1962(b) (Counts III and XI);
participation in a RICO enterprise, 18 U.S.C. § 1962(c) (Counts
IV and Count XII); conspiracy in violation of RICO, 18 U.S.C. §
1962(d) (Counts V and Count XIII); New Jersey RICO - N.J. Stat.
Ann. 2C:41-2, et. seq. (Counts VII and Count XV); and civil
conspiracy (Counts VIII and XVII).  The FAC also asserts claims
for intentional infliction of emotional distress (Count XVI, by
Gural) and loss of consortium (Count XVIII, by Eleanor Gural).
Plaintiff Gural's Complaint does not include claims against
Defendants, Mark Neisser, Henry Chudzinski or JCA Associates,
Inc.[10]

---

[10] Prior to the filing of this lawsuit, Plaintiff Gural
brought a claim against JCA, Neisser and Chudzinski in state
court that is substantially similar to the claims asserted here.
(Confidential Settlement Agreement, ¶13 - Def. Exhibit B; Def.'s
Statement of Material Facts ¶¶ 463-520.)  While it appears that

Discovery on this matter has been ongoing for over two years under the supervision of U.S. Magistrate Judge Ann Marie Donio. During that time, the parties have had numerous discovery disputes and Judge Donio has had numerous status conferences.  On December 1, 2005, Defendant Norcross filed a motion for summary judgment against Plaintiffs.  All Defendants joined Defendant Norcross' motion and rely on the arguments made in his briefs filed in support of the motions.  On January 27, 2006, Plaintiffs filed opposition to Defendants' motions to which Defendants replied on February 7, 2006.  This Court heard oral argument on Defendants' motions for summary judgment on March 2, 2006.  In addition, on December 22, 2005, Defendant Norcross filed a motion for fees and sanctions under Fed. R. Civ. P. 11 to which all Defendants joined, which is addressed in Part IV, below.

---

Defendants are under the impression that Gural has named Neisser, Chudzinski and JCA as defendants (along with Norcross and Gallagher) in Counts IX-XVIII, the Court does not consider Gural to have brought his claims against JCA, Neisser and Chudzinksi. Further, if Plaintiffs had, Plaintiffs conceded at oral argument that Gural's claims against these three defendants must be dismissed.  The Court, however, had doubts that Gural ever properly brought such claims against these three Defendants.  The FAC states that Rosenberg brings his claims as to "all Defendants" whereas Gural brings his claims as to "Defendants, George Norcross and R. Louis Gallagher."  Second, in their opposition brief, Plaintiffs do not specifically argue that Gural has any claims against JCA, Neisser and Chudzinksi, instead only arguing that the New Jersey Entire Controversy Doctrine does not bar Plaintiffs' claims against Norcross and Gallagher.  In any event, Gural has brought no claims herein against JCA, Neisser or Chudzinski.

### III. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

#### A.    Summary Judgment Standard of Review

Summary judgment is appropriate when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).[11]  In deciding whether there is a disputed issue of material fact, this Court must view the evidence in favor of the non-moving party by extending any reasonable favorable inference to that party. See Hunt v. Cromartie, 526 U.S. 541, 552 (1999) (citing Liberty Lobby, 477 U.S. at 255).  The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  Liberty Lobby, 477 U.S. at 250; Brewer v. Quaker State Oil Refining Corp., 72 F.3d 326, 329-30 (3d Cir. 1995) (citation omitted).

The moving party always bears the initial burden of showing that no genuine issue of material fact exists, regardless of which party ultimately would have the burden of persuasion at trial.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

---

[11] A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law.  Id.  Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.  Id.

However, where the nonmoving party bears the burden of persuasion at trial, as plaintiff does in the present case, "the burden on the moving party may be discharged by 'showing' –– that is, pointing out to the district court –– that there is an absence of evidence to support the nonmoving party's case."  <u>Id</u>. at 325. The non-moving party "may not rest upon the mere allegations or denials of" its pleading in order to show the existence of a genuine issue.  Fed. R. Civ. P. 56(e).  Plaintiff must do more than rely only "upon bare assertions, conclusory allegations or suspicions."  <u>Gans v. Mundy</u>, 762 F.2d 338, 341 (3d Cir. 1985), <u>cert</u>. <u>denied</u>, 474 U.S. 1010 (1985) (citation omitted)  Thus, if the plaintiff's evidence is a mere scintilla or is "not significantly probative," the court may grant summary judgment. <u>Liberty Lobby</u>, 477 U.S. at 249-50.

   **B.   <u>Preliminary Matters</u>**

   Before addressing the substance of Defendants' motion for summary judgment and sanctions, this Court must address three preliminary issues.

      **1.   Plaintiffs' Rule 56(f) Affidavit**

   First, the Court will address Plaintiffs' arguments that, since discovery is not yet complete, summary judgment is premature.  (Pl.'s Opp. at 12.)  Deciding this preliminary issue is critical to this Court's disposition of Defendants' summary judgment motions because, according to Plaintiffs, the fact that

discovery is incomplete precludes this Court from granting
Defendants' motions on the merits.

Under Fed. R. Civ. P. 56(f), a party may oppose a motion for
summary judgment by submitting an affidavit that sets forth good
reasons why the party cannot submit an affidavit justifying the
party's position in opposition to the motion.[12]  See Robert E.
Bartkus, N.J. Federal Civil Procedure ¶ 8-12:4 at 212-13 (1999).
Upon review of a Rule 56(f) affidavit, the court may refuse to
entertain the pending summary judgment motion or may order a
continuance to permit additional discovery.  "[W]here the facts
are in possession of the moving party a continuance of a motion
for summary judgment for purposes of discovery should be granted
almost as a matter of course."  Miller v. Beneficial Mgmt. Corp.,
977 F.2d 834, 846 (3d Cir. 1992); Doe v. Abington Friends Sch.,
2007 U.S. App. LEXIS 5945 at *16-18 (3d Cir. 2007).[13]  However,

---

[12] Specifically, Rule 56(f) provides in pertinent part that:

Should it appear from the affidavits of a party
opposing the motion that the party cannot for
reasons stated present by affidavit facts
essential to justify the party's opposition, the
court may refuse the application for judgment or
may order a continuance to permit affidavits to be
obtained or depositions to be taken or discovery
to be had or may make such other order as is just.

Fed. R. Civ. P. 56(f).

[13]   In Doe v. Abington Friends School, the Third Circuit
Court of Appeals vacated the district court's grant of summary
judgment in favor of defendants, holding that the district court
contravened Fed. R. Civ. P. 56(f).  See 2007 U.S. App. LEXIS 5945

in deciding whether to grant a Rule 56(f) motion, the Court must consider "what particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has not been previously obtained."  San Filippo v. Bongiovanni, 30 F.3d 424, 432 (3d Cir. 1994); see also Bradley v. United States, 299 F.3d 197, 206 (3d Cir. 2002).  "[I]f a court determines that the non-moving party has been afforded sufficient time for discovery, then the court can require that party to proffer its evidence and proceed with the motion."  Bartkus, N.J. Federal Civil Procedure ¶ 8-12:4 at 213.  The decision to grant a Rule 56(f) motion lies in the sole discretion of the district court.  See San Filippo, 30 F.3d at 432; see also Koplov v. Ford Motor Co., 795 F.2d 15, 18 (3d Cir. 1986)("[D]istrict judge's refusal to postpone consideration of defendant's summary judgment motion was well within the range of permissible discretion.") Moreover, a request for relief under Rule 56(f) is "extremely unlikely to succeed" when the party seeking the delay "has failed to take advantage of discovery."  Koplov, 795 F.2d at 18 (quoting 10A C. Wright, A.

---

at *1 (3d Cir. 2007).  Specifically, the Third Circuit held that the district court erred in not granting plaintiffs' motion for a continuance pursuant to Rule 56(f) where (1) plaintiffs had identified six areas of inquiry relevant to the issues presented at summary judgment where discovery was needed and (2) plaintiffs had requested of defendants, but had not been provided with, documents that may have shed light on the issues presented at summary judgment.  Id. at *16-17.  The court also held that they would not fault plaintiffs for failing to provide affidavits relating to facts and information that is "principally within the control of [the defendants] and which [plaintiffs] could only have known second-hand."  Id. at 17, n. 8.

Miller, M. Kane, <u>Federal Practice and Procedure</u> § 2741 at 553
(1983))("To require less is to deprive trial judges of the
ability to effectively manage the cases on their overcrowded
dockets.")

Counsel for Plaintiffs attaches a Rule 56(f) affidavit to
its opposition papers stating that discovery is grossly
incomplete largely because Defendants' responses to discovery
requests were "wholly inadequate and incomplete" and that
Plaintiffs have not had the opportunity to depose Defendants.
(Pl.'s Opp. Br. at Ex B., Affidavit of Gregg L. Zeff ¶ 5-8).  In
the affidavit and at oral argument, Plaintiffs highlight numerous
areas where discovery is incomplete, allegedly preventing them
from fully responding to Defendants' motions.  First, Plaintiffs
seek to take the deposition of Defendants in order to fully
develop certain facts such as (1) the damages Plaintiffs suffered
to their political careers and respective businesses "as a direct
result of Defendants' racketeering acts," (Zeff Aff. ¶ 9), and
(2) the loss of political appointments and political influence
each Plaintiff has suffered.  (<u>Id.</u> ¶ 10(1)(e).)  Plaintiffs
argue that these depositions were not taken during discovery
because, as memorialized in Judge Donio's May 19, 2004 scheduling
order, the parties agreed that the deposition of Plaintiffs would
take place before those of Defendants.  [Docket Item No. 55.]
Next, Plaintiffs argue that discovery is incomplete because

Plaintiffs need to take depositions of certain third-parties --
such as John Kocybinski (successful chairmanship candidate),
Robert Stewart (auditor of Palmyra), the 14 or so voters that
Gural contends he would have persuaded to vote for Rosenberg in
the 2000 BCDC chairmanship elections if not for the influence of
Defendants, and various South Jersey engineering firms (including
Pennoni Associates, Inc.) that have informed Gural that they
cannot contribute to political campaigns associated with him or
Palmyra -- are necessary.  (Id. ¶ 10(2)-(11)).)

In opposition to Plaintiffs' argument, Defendants contend
that Plaintiffs have not met their burden of showing why summary
judgment is premature.  (Def.'s Reply Br. at 2-3.)  Instead,
according to Defendants, Plaintiffs seek additional discovery in
order to "turn this litigation into an all-out political circus."
(Id. at 3.)

This Court will deny Plaintiffs' request for a continuance
under Rule 56(f) for several reasons.  First, Plaintiffs have
failed to explain why the information they state is critical to
the pending motions was not sought during discovery.  Indeed,
Defendants' filing of their summary judgment motions is
consistent with Judge Donio's management of the case under Fed.
R. Civ. P. 16 in which Judge Donio gave the parties considerable

time to conduct discovery.[14]  If Plaintiffs were having

difficulty obtaining discovery from Defendants the proper course

of action would have been to file a motion to compel or to raise

the issue with Judge Donio at her frequent status conferences

rather than waiting until Plaintiffs' opposition to summary

judgment motions to raise these issues with the Court.  Moreover,

Plaintiffs appear to have conceded that the timing of Defendants'

summary judgment motions was appropriate as Plaintiffs themselves

had previously indicated to the Court (as early as April, 2005)

that summary judgment motions were appropriate at _that_ time.

(Pl.'s Memo of Law in Opp. to Mot. for Limited Discovery, at 8-9

[Docket Item No. 82].)

     Second, this Court is not compelled to grant a plaintiff's

request for a continuance in this case "as a matter of course"

(as established in the Third Circuit's decision in _Miller v._

_Beneficial Mgmt. Corp._) because here, unlike in _Miller_, the facts

Plaintiffs seek are _not_ in the possession of the moving party.

_Miller_, 977 F.2d at 846.  For example, the Court does not agree

that Plaintiffs needed to take the depositions of Defendants in

---

     [14] In support for their position, Defendants cite _Watson v._
_City of Salem_, 934 F. Supp. 643 (D.N.J. 1995)(after analyzing a
party's Rule 56(f) motion, the district court rejected a Rule
56(f) argument placing great weight on the magistrate judge's use
of the prospective filing of a summary judgment motion to control
the litigation).  Defendants contend that given Magistrate Judge
Donio's same objectives, _Watson_ merits rejection of Plaintiffs'
argument that summary judgment is premature.

order prove that Plaintiffs themselves suffered damage to their
political and business careers.  Certainly Plaintiffs are in a
better position to provide such evidence to the Court (either in
the form of an affidavit or certification of the Plaintiffs
themselves or of other witnesses available to them) of the harm
they have suffered.  Furthermore, the agreement between the
parties to depose Defendants only after depositions of Plaintiffs
are complete did not preclude Plaintiffs from deposing third
parties such as Robert Stewart, John Kocybinski, Pennoni
Associates, of any of the 14 voters that may have voted for
Rosenberg for the chairmanship, in order to provide evidence in
support of Plaintiffs' claims.  Plaintiffs could have deposed
these individuals or sought affidavits or certifications from
them on these points during the more than two years during which
discovery was ongoing.

Finally, Plaintiffs have failed to persuade the Court that
any of the information sought, "if uncovered...would preclude
summary judgment...."  San Filippo, 30 F.3d at 432.  As the Court
discusses in Section III.C infra, central to Defendants' motion
is the argument that Plaintiffs cannot prove that they suffered
any harm as a result of Defendants' alleged activities.
Generally, whether a plaintiff is damaged is an issue within the
peculiar knowledge of the plaintiff.  It is a plaintiff's duty to
monetize the harm he or she claims to have suffered, and a

24

defendant would lack this sort of knowledge, with possible
exceptions (not applicable here) such as for the defendant who
occupied a fiduciary duty or position of financial trust for the
plaintiff.  Even if the Court ordered a continuance and permitted
even more time for Plaintiffs to conduct the discovery that they
are now seeking, the Court doubts that Plaintiffs could obtain
evidence, otherwise presently unavailable, to prove their own
financial harm.  In fact, with respect to Rosenberg, much of what
Plaintiffs seek (e.g., whether someone would or would not have
hired Rosenberg based on political position or whether someone
would have voted for Rosenberg) is pure speculation.  Moreover,
with respect to Gural, much of what is sought (e.g., whether an
engineering firm would have contributed to Gural's Palmyra
mayoral election campaign) is not material to Gural's claims of
an injury because Gural won the 2004 Palmyra mayoral election.

　　　For all these reasons, the Court finds the present summary
judgment motions are not premature and that Plaintiffs have not
shown good cause to postpone their adjudication under Rule 56(f).

### 2.　Plaintiffs' Failure to File a Statement of Material Facts under Local Civil Rule 56.1 [15]

　　　Defendants argue that, because Plaintiffs have failed to
submit a Statement of Material Facts pursuant to L. Civ. R.

---

[15]　L. Civ. R. 56.1 states that "on a motion for summary
judgment, each side shall furnish a statement which sets forth
material facts as to which there exists or does not exist a
genuine issue."

25

56.1., all facts in the opposing party's Statement of Material
Facts are deemed admitted.  See Hill v. Algor, 85 F. Supp. 2d
391, 408 n. 26 (D.N.J. 2001).  Although Plaintiffs' opposition
brief does contain a statement of facts (titled "Facts" in its
opposition brief), Plaintiffs failed to submit a separate
statement specifically identifying the disputed and undisputed
material facts as required by L. Civ. R. 56.1.

A moving party's failure to comply with Rule 56.1 is itself
sufficient to deny its motion.  See Bowers v. NCAA, 9 F. Supp.2d
460, 476 (D.N.J. 1998).  In the alternative, "facts submitted in
the statement of material facts, which remain uncontested by the
opposing party are deemed admitted."  Hill, 85 F. Supp. 2d at 408
n. 26; see also Montville Twp. v. Woodmont Builders, 2005 U.S.
Dist. LEXIS 18079 (D.N.J. Aug. 12, 2005)(where plaintiff did not
file Rule 56.1 statement, "the Court will accept as true
[defendant's] uncontested statements of fact for the purpose of
the ruling.")[16]  Other courts in this District have held that,
where the non-moving party had not submitted a Rule 56.1
statement, the court treated facts in the moving party's Rule
56.1 statement as admitted "unless controverted in [the non-
moving party's] briefs or contradicted by the evidence," Longoria

---

[16]  Instead, the court can choose to "admonish that the
parties consult the local rules in future cases."  Comose v. New
Jersey Transit Rail Operations, Inc., 2000 U.S. Dist. LEXIS 20790
(D.N.J. 2000); see also Leme v. International Total Serve., 56 F.
Supp.2d 472, 477 n.4 (D.N.J. 1999).

v. New Jersey, 168 F. Supp. 2d 308, 312 n.1 (D.N.J. 2001), or

when such facts are "backed up by evidence." Maertin v.

Armstrong World Indus., Inc., 2000 WL 554168, *1 (D.N.J. May 3,

2000).

Having found no evidence of bad faith on the part of

Plaintiffs, the Court will not suppress Plaintiff's opposition on

these procedural grounds but instead will now address the merits

of the case and Defendants' motions, albeit unaided by any Rule

56.1 response by Plaintiffs.  However, all facts contained in

Defendants' Rule 56.1 statement will be admitted if (1) supported

by evidence and (2) not contradicted in Plaintiffs' opposing

evidence.

> **3.    Whether Plaintiff Gural's Claims against
> Defendants Norcross and Gallagher are Barred by
> the New Jersey Entire Controversy Doctrine[17]**

Defendants contend that all of Gural's claims against

Defendants Norcross and R. Louis Gallagher, II should be

dismissed as barred by the New Jersey Entire Controversy Doctrine

("NJECD").  (Def.'s Br. at 8-12.)  These claims should be barred

because, in June of 2001, Plaintiff Gural filed suit against

Neisser, Chudinski and JCA in New Jersey Superior Court under the

New Jersey CEPA alleging that Neisser and Chudinski took certain

actions in retaliation against Gural.  (Def.'s Br. at GN-1,

_____

[17] As explained supra, Plaintiffs conceded at oral argument
that Plaintiff Gural has no remaining claims against Defendants
JCA Associates, Chudzinkski and Neisser.

Complaint, <u>Gural v. JCA</u>, BUR-L-001949-01.)  According to
Defendants, Gural was required to bring both the federal RICO
claim and the other state law claims he now brings against
Defendants Norcross and Gallagher in the 2001 CEPA action.
Defendants state that Gural's federal RICO claim and state law
claims arose from the same facts and circumstances that Gural's
CEPA claim arose from and the NJECD requires that a party bring
all claims arising from the same facts and circumstances in one
single action.  (<u>Id.</u>)  Gural argues that the NJECD is
inapplicable here because (1) Gural's RICO claim and other state
law claims had not accrued at the time of the June 2001 state
court action ("various damages that Gural has sustained since
leaving JCA" have continued and the "events since settlement of
Gural's CEPA Complaint have lead him to his [sic] courthouse")
and (2) that Gural could not have brought a claim against
Norcross and Gallagher because the earlier claims were brought
under CEPA, which allowed Gural only to bring claims against his
employer.  (<u>Id.</u>)

     The NJECD requires that all claims arising out of a single
or series of transaction be brought against all potential parties
in a single action.  <u>See</u> Bartkus, <u>N.J. Federal Civil Procedure</u> ¶
1-5:6 at 24; <u>see</u> <u>also</u> <u>Melikian v. Corradeti</u>, 791 F.2d 274, 279
(3d Cir. 1986).  The doctrine "also may preclude subsequent
litigation against a party that could or should have been brought

into the litigation but was not."[18] Bartkus, <u>N.J. Federal Civil</u> <u>Procedure</u> ¶ 19-3.7 at 482 (citing N.J.R. 4:28, 4:29 and 4:30A); <u>see</u> <u>also</u> Pressler, <u>Current N.J. Court Rules</u>, Comments 1419-40 (Gann 2006 ed.)  The NJECD also applies to situations involving a former settlement where the same purposes of the doctrine would be served by precluding claims, <u>see</u> <u>Shoremount v. APS Corp.</u>, 368 N.J. Super. 252, 255-56 (App. Div. 2004), and where another plaintiff had separately sued similar defendants and settled. <u>See</u> <u>Prevratil v. Mohr</u>, 145 N.J. 180 (1996).  The NJECD, however, does not bar a party from raising claims that he or she could not have brought in the initial action.  <u>See</u> <u>Jones v. Holvey</u>, 29 F.3d 828, 831 (3d Cir. 1994).  Rather, under New Jersey law, a court "must be mindful that...the party whose claim is being sought to be barred must have had a fair and reasonable opportunity to have fully litigated that claim in the original action."  <u>See</u> <u>Ditrolio</u> <u>v. Antiles</u>, 142 N.J. 253, 273-74 (1995)(internal quotations omitted).

Gural's cause of action against Norcross and Gallagher falls into the category of a claim that could not have been brought at the time Gural brought his 2001 CEPA claim against JCA

---

[18] The NJECD is applicable in federal courts in New Jersey and has been used to preclude actions brought in federal court that have already been litigated in state court.  <u>See</u> <u>Sutton v.</u> <u>Sutton</u>, 71 F. Supp. 2d 383, 389 (D.N.J. 1999); <u>see</u> <u>also</u>  <u>Okpor v.</u> <u>Rutgers, the State University of New Jersey</u>, 2005 WL 2044921, at *6-8 (D.N.J. 2005).

Associates, Neisser and Chudzinksi.  CEPA is a New Jersey state law that provides the exclusive remedy against a claimant's employer for retaliatory actions against the employee.  See N.J.S.A. 34:19-3; Abbamont v. Piscataway Twp. Bd. of Educ., 138 N.J. 405, 417-18 (1994).  Because neither Norcross and Gallagher were employers of Gural, he could not have brought the RICO and state law claims currently asserted against Norcross and Gallagher (whether or not the claims had accrued at the time).  See Kounelis v. Sherrer, 396 F.Supp. 2d 525, 532 (D.N.J. 2005)("CEPA is only applicable when there is a legitimate employee-employer relationship between the parties.")   As such, Gural's claims against Norcross and Gallagher may proceed.

### C.   **Plaintiffs' RICO Claims**

In the FAC, both Plaintiffs bring a number of claims under RICO, 18 U.S.C. § 1962 et seq.  Specifically, Plaintiffs allege:

- extortion in violation of RICO, 18 U.S.C. § 1962(b), (Counts II and X);

- bribery in violation of RICO, 18 U.S.C. § 1962(b) (Counts III and XI);

- participation in a RICO enterprise, 18 U.S.C. § 1962(c) (Counts IV and Count XII); and

- conspiracy in violation of RICO, 18 U.S.C. § 1962(d) (Counts V and Count XIII).

Although the precise requirements for establishing a civil RICO cause of action depend on the subsections of the statute a plaintiff invokes, there are four basic elements that a plaintiff

must show to prove any civil RICO action: (1) the existence of a RICO enterprise; (2) the existence of a pattern of racketeering activity; (3) a nexus between the defendant, the pattern of racketeering activity or the RICO enterprise; and (4) resulting injury to the plaintiff's business or property.  See Blizzard v. Exel Logistics N. Am., Inc., 2005 U.S. Dist. LEXIS 28160 (D.N.J. 2005); see also Klapper v. Commonwealth Realty Trust, 657 F. Supp. 948, 953 (D. Del. 1987.)

### 1.   Plaintiffs have Failed to Demonstrate Harm to their Business or Property

According to Defendants, this Court need not consider Plaintiffs' substantive requirements of RICO in this case because Plaintiffs have failed to demonstrate that either Plaintiff has suffered a harm to his respective business or property.  (Def.'s Rosenberg Br. at 34.)  Plaintiffs counter by arguing that, because discovery is not completed, "Plaintiffs submit that this Court should not dismiss Plaintiffs' claims based on standing or lack of concrete property loss."  (Pl.'s Opp. Br. at 19.)  To this end, Plaintiffs continue to rely on the averments made in its FAC.  (Id.)  Plaintiffs reiterate that Gural was constructively discharged from his job at JCA and that both he and Rosenberg have been denied business opportunities and have lost increased business as a result of Defendants' racketeering. (Id. at 20-21.)

The issue of whether Plaintiffs can prove a concrete

financial loss is a threshold issue that Plaintiffs' RICO claims cannot get beyond.  The Supreme Court has held that a plaintiff "only has standing [to assert a RICO claim] if, and can only recover to the extent that, he has been injured in his business or property by conduct constituting the [RICO] violation." Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985); see also 18 U.S.C. § 1964(c); Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786 (3d Cir. 1984).[19]  Thus, a plaintiff can establish standing by (1) showing that he suffered an injury to his business or property by demonstrating a concrete financial loss (rather than merely injury to a valuable intangible property interest); and (2) demonstrating that his injury was proximately caused by the defendant's RICO violation.   See Maio v. Aetna, Inc., 221 F.3d 472, 482-83 (3d Cir. 2000)(quoting Steele v. Hospital Corp. of Am., 36 F.3d 69, 70 (9th Cir. 1994); see also Eli Lilly & Co. v. Roussel Corp., 23 F. Supp.2d 460, 483 (D.N.J. 1998)("a RICO plaintiff can only recover if he has been injured in his business or property....")[20]  As the parties opposing

_____

[19]    18 U.S.C. § 1964(c) provides:

Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefore in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of suit, including a reasonable attorney's fee, . . .

[20]   See also Murphy v. Bancroft Constr. Co., 2002 WL 31641641, *3 (D. Del., Nov. 15, 2002) aff'd 135 Fed Appx. 515 (3d Cir. May 5, 2005) ("[I]t is well settled law that in any RICO

summary judgment on this ground, Plaintiffs have the burden of producing admissible evidence from which a reasonable jury could find that Plaintiffs suffered a concrete financial loss proximately caused by Defendants' RICO violations.  Plaintiffs have failed to meet this standard for a number of reasons.

First, despite the fact that discovery was ongoing for more than two years and that the parties have had numerous status conferences with Magistrate Judge Donio, Plaintiffs offer little in the way of material facts in dispute and have presented no evidence of a concrete financial loss due to Defendants' actions. Instead, Plaintiffs' brief offers excuses, promises, generalities and rhetorical questions.  (Pl.'s Opp. Br. at 20-25.)  For example, Plaintiffs state that "anecdotal evidence abounds to support Plaintiffs' claims" (id. at 21) and "[t]hese inchoate facts, coupled with the pleadings and proposed expert opinion" (id. at 24) support Plaintiffs' arguments.[21]  Such an utter lack of evidence fails to raise a genuine issue of material fact. Under Fed. R. Civ. P. 56(e), the non-moving party in a motion to dismiss "may not rest upon the mere allegations" in its pleading in order to show the existence of a genuine issue.  Fed. R. Civ. P. 56(e)(emphasis added).  This is the situation here as

_____

case, injuries to business or property are not actionable unless they result in tangible financial loss to the plaintiff.")

    [21] Rosenberg does, however, outline his legal expenses as a concrete financial loss.

Plaintiffs have failed to present any evidence outside of anecdotes and the averments made in the FAC and thus, have failed to raise a genuine issue of material fact.

Second, the Court is doubtful that Rosenberg, even with additional time to conduct the discovery he is seeking in his Rule 56(f) motion, could present evidence of a concrete financial loss to raise a genuine issue.  Rosenberg's claims of lost work due to the absence of expected political patronage jobs are not the type of "concrete financial losses" that the RICO Act will recognize.  For example, Rosenberg alleges that he lost political appointments in Edgewater Park and Burlington Township, and was unsuccessful in obtaining future political appointments due to Defendants' actions.  (Rosenberg Dep. Tr. at 111, 151.)  It is clear that under the Third Circuit's decision in Maio, Rosenberg has failed to give evidence in support of a cause of action that is recoverable under RICO for economic harm.  See Maio, 221 F.3d at 494-95 ("the present economic harm [plaintiffs] allege to have suffered necessarily is contingent upon the impact of events in the future which have not yet occurred.")  Finally, Plaintiffs have failed to persuade this Court to recognize (or point to any case law where any other Court has recognized) a state law right to a "political future" or for loss of "community standing," that is somehow to be preserved for those who choose to enter upon political careers.  (Id. at 37-40.)

34

Third, the evidence Defendants have presented with their
motion shows that, rather than having their businesses and
political careers harmed since Defendants' alleged actions in
2001 and 2002, Plaintiffs' careers and businesses have improved.
Specifically, with respect to Rosenberg, the Court notes that (1)
Rosenberg was reappointed as the solicitor of Palmyra on February
10, 2001 (and therefore lost no income from Defendants' alleged
attempts to fire him) and (2) based on his tax returns, has
increased income from his law practice from 1999 to 2000 and 2000
to 2001.  (Rosenberg Dep. Tr. at 163-164, 203-04.)  In addition,
Rosenberg has presented no evidence of a loss of clients as a
result of Defendants' actions as he could not "say definitively"
whether he lost <u>any</u> business due to Defendants' actions.
(Rosenberg Dep. Tr. at 162.)  With respect to Gural, the Court
notes that his annual earnings have increased between 2001 and
2002 (since he left JCA Associates) from an annual salary of
$45,000 to a salary of $60,000. (Gural Dep. Tr. at 75-76.)
Moreover, Gural has not suffered any concrete financial loss in
relation to his political career. (<u>Id</u>.)  Instead, Gural's
political career has thrived, as he was elected to a higher
office (he now serves as the mayor of Palmyra) in 2004 than he
held in 2000 (when he served as a Palmyra Borough councilman)).
(<u>Id</u>.)

### 2.   Defendants are Entitled to Summary Judgment as to Plaintiffs' Federal RICO Claims

Plaintiffs have failed to point out, either in their pleadings, brief in opposition to Defendants' motions, or any certifications or affidavits accompany their opposition, any tangible financial loss or that a genuine issue of material fact as to Plaintiffs' losses exist.  Metaphysical concepts of financial loss do not satisfy this standard.  As such, the Court will grant Defendants' motion for summary judgment as to the four Federal RICO claims Rosenberg brought against all Defendants (Counts II-V)and the four Federal RICO claims Gural brought against Norcross and Gallagher (Counts X-XIII).[22]

### D.   Remaining State Law Claims Brought by Both Plaintiffs

In addition to claims under the Federal RICO Act, Plaintiffs bring state law claims for a violation of the New Jersey RICO statute, tortious interference with contract and business relationships, and civil conspiracy.  Defendants first argue that the Court should decline to exercise supplemental jurisdiction over Plaintiffs' state law claims if the Court dismisses Plaintiffs' Federal RICO claims.  Under 28 U.S.C. § 1367(c), once

---

[22] The Court, in finding that Plaintiffs are unable to demonstrate concrete financial harm to businesses or property under RICO, does not consider whether Plaintiffs have demonstrated that the Defendants committed racketeering acts as alleged under RICO.  Even if such evidence of Defendants' criminal conduct exists, Plaintiffs cannot recover under RICO for the sort of harm they have allegedly suffered, which is the only holding of this Court under RICO.

a district court has dismissed all claims over which it has
original jurisdiction, the district court has discretion to
retain jurisdiction over any pendent state law claims.  See
Pennsylvania Nurses Ass'n v. Pennsylvania State Educ. Ass'n., 90
F.3d 797, 801 (3d Cir. 1996); see also   Erich v. B.A.T. Indus.,
P.L.C., 964 F. Supp. 164, 167 (D.N.J. 1997).  In doing so, the
Court must "consider generally accepted principles of judicial
economy, convenience, and fairness to litigants."  United Mine
Workers v. Gibbs, 388 U.S. 715, 726 (1966).

This case has been pending in this Court for over three
years and the parties have conducted over two years worth of
discovery.  At this point in the litigation, it is in the
interest of judicial economy and fairness to the litigants that
this Court retain jurisdiction over the remaining state court
claims for the following reasons.  Both the District Judge and
the Magistrate Judge are familiar with the parties' claims and
the facts of this case.  Second, retaining jurisdiction over this
matter would likely lead to a quicker resolution of the matter
than if this Court dismissed the remaining claims for lack of
Federal jurisdiction and the Plaintiffs were required to restart
the action in state court.  Finally, retaining jurisdiction would
not prejudice the parties with respect to their state law claims
as this court is well-versed in interpreting aspects of New
Jersey state law.

Turning to the merits of Defendants' arguments, this Court holds that summary judgment is appropriate in favor of Defendants with respect to Plaintiffs' New Jersey RICO, tortious interference and civil conspiracy claims.

### 1.   New Jersey RICO

Defendants argue that Plaintiffs' New Jersey RICO Act claim should be dismissed because, like the federal RICO claim, Plaintiffs are unable to (i) show a causal link between Defendants' activities and the harm (if any) suffered by Plaintiffs and (ii) demonstrate a "pattern of racketeering activity."  (Def.'s Br. at 64 (Rosenberg).)

The New Jersey RICO Act has been interpreted by borrowing from federal RICO precedents. See Barr Labs., Inc. v. Bolar Pharm. Co., 1992 U.S. Dist. LEXIS 22883, *29-30 (D.N.J. 1992) ("the case law interpreting the federal RICO statute may be used to interpret New Jersey's RICO statute"); Kievit v. Rokeach, 1987 U.S. Dist. LEXIS 16131, *20-21 (D.N.J. 1987)("The virtual identity of the federal and New Jersey RICO acts permits the Court to interpret them in a consistent manner.")  Indeed, the New Jersey courts have held similarly, stating that the use of federal case law "would be especially appropriate in this matter in that the New Jersey RICO statute 'borrows' its structure, purpose and remedies from federal RICO."  In re Liquidation of Integrity Ins. Co., 245 N.J. Super. 133, 135 (Law Div. 1990).

Moreover, the New Jersey RICO Act provides no more expansive definition of harm to business or property than the Federal RICO Act.  <u>See</u> N.J. Stat. Ann. 2C:41-2; 18 U.S.C. § 1964(c).

As discussed in Section III.C, <u>supra</u>, this Court finds that Plaintiffs have failed to provide any evidence that they have suffered any concrete financial loss of the type cognizable under New Jersey RICO.  As such, Plaintiffs have failed to raise genuine issues of material fact related to these issues.

### 2.    Tortious Interference with Business Relations

Defendants contend that Plaintiffs' tortious interference claims are also without merit.  Under New Jersey law in order to bring a claim of tortious interference with business relations, a plaintiff must show that: (1) plaintiff had a continuing or prospective economic relationship or reasonable expectation of economic advantage, (2) defendant knew of the contract or relationship of expectance, (3) the interference was done intentionally or without justification or excuse, (4) it is reasonably probable that plaintiff's loss was a result of defendant's interference and (5) damages resulted from the interference.  <u>See</u> <u>Lamorte Burns & Co., Inc. v. Walters</u>, 167 N.J. 285, 305-06 (2001); <u>Baldasarre v. Butler</u>, 132 N.J. 278, 293 (1993); <u>Eli Lilly & Co. v. Roussel Corp.</u>, 23 F. Supp. 2d 460, 493 (D.N.J. 1998).  Defendants argue that Plaintiffs had no reasonable expectation of prospective business relationships as

the expectation was in the form of political patronage positions that would flow from either a prominent position in a political party (in the case of Rosenberg) or as an employee or elected official (in the case of Gural).[23]

The central issue here is that, under New Jersey law, Rosenberg and Gural must show that they had a "reasonable expectation of economic advantage that was lost as a direct result" of a Defendants' actions. Lamorte, 167 N.J. at 306. "[A] plaintiff asserting a tortious interference claim must allege facts that show an existing or prospective economic . . . relationship . . .'[a] mere allegation of lost business does not suffice." Eli Lilly & Co., 23 F. Supp. 2d at 494 (quoting Advanced Power Sys., Inc. v. Hi-Tech Sys., Inc., 801 F. Supp. 1450, 1459 (E.D. Pa. 1992)). The Court finds that neither Rosenberg nor Gural can maintain a cause of action for tortious interference with prospective business relationships as the expectation was in the form of political patronage positions. However, the Court finds that Gural can maintain a cause of action for tortious interference with respect to his engineering job at JCA Associates and that summary judgment in favor of Defendants Norcross and Gallagher would be inappropriate.

---

[23] Plaintiffs do not offer direct opposition in their papers but instead argues only that, because Plaintiff "has only been afforded the most limited of discovery," summary judgment should be denied. (Pl.'s Opp. Br. at 45.)

### a.   Political Patronage Positions

Here, Plaintiff Rosenberg has not presented any evidence that he had a reasonable expectation of economic advantage that would come from winning the 2000 BCDC chairmanship, an opportunity that Defendants allegedly blocked.  For example, Rosenberg bases his argument that he had a "reasonable expectation of economic advantage" on the fact that political patronage jobs would have flowed to him had he won the chairmanship election.  Aside from the unsupported certification of Plaintiffs' proposed expert on New Jersey politics and corruption (Carl Mayer, Esq.), Rosenberg has presented no evidence that such a windfall of patronage jobs was a "reasonable expectation."[24]  (Certification of Carl Mayer, Pl.'s Opp. Br. at

---

[24] In his certification, Mayer states that it is his opinion that "County political chairmen who are attorneys utilize the Chairman's position as a source of legal business" (Mayer Cert. ¶ 8) and that actions of Defendants "had a direct effect on Rosenberg's ability to receive additional political appointments in mainstream Democratic communities," (Id. ¶ 10), and that he believed "Rosenberg's failure to secure additional paid/legal positions was directly attributable to the criminal attempts by Norcross...[but that he] cannot with any certainty give opinions regarding this particular matter at this time without further facts."  The Court notes that Mayer has failed to point the Court to any underlying facts supporting his conclusions.  In fact, Mayer states that he "advised...Plaintiffs to depose numerous county chairmen who are attorneys to inquire whether these individuals have obtained substantial business through elections to Chairman." (Id. ¶ 9.)  Without facts to support Mayer's conclusions, this Court finds that this opinion does not raise any material issue of fact.  Such an opinion is not anchored in the facts of this case and would therefore be inadmissible under Rule 702, Fed. R. Ev., and thus it cannot form a basis for opposing summary judgment under Rule 56(e), supra.

Ex. C.)   Mr. Mayer's certification alone does not, in the eyes of this Court, create a triable fact on whether such patronage jobs were a "reasonable expectation."  Without an affidavit or certification from Rosenberg of a third party stating that, but for Rosenberg's loss in the 2000 election he would have likely received an appointment as a township or municipal attorney, for example, this Court cannot find that there is a triable issue of material fact as to Rosenberg's reasonable expectation.

Moreover, the Court recognizes that the process of awarding political patronage jobs in the rough-and-tumble world of New Jersey politics can be a process tinged with political alliance and cronyism.  Such activities are performed purely in the political arena, absent breach of statutory or constitutional right.  This Court is not the arena for determining whether political alliances and maneuverings are fair or proper as among participants.  Likewise, the Court is unable to recognize that one who secures political office has a "reasonable expectation" of securing private business relationships based on holding a political position or elected office.  Trading upon political office for private financial gain is not a protectable expectation, even if, unlike the present case, such a gain could be monetized.

In addition, the notion that more discovery is necessary for Rosenberg to properly respond to Defendants' arguments in support

42

of summary judgment on this claim also falls flat as discussed in Part III.A, _supra_.  Plaintiffs main issue is that they did not have an opportunity to depose Defendants.  Plaintiffs certainly had the ability to present evidence in the form of their own testimony or affidavits or certification from third parties that Rosenberg had a reasonable expectation of receiving legal work as a result of political patronage upon taking the position of BCDC chairman.  The Court does not see how the inability to depose Defendants impacts Plaintiffs' ability to prove a reasonable expectation of economic advantage from such patronage.  As such, the Court will grant Defendants' motion for summary judgment (as to Rosenberg) with respect to his tortious interference claims.

### b.   Gural's Employment at JCA Associates

Gural's claim of tortious interference with business relationships with respect to his employment at JCA Associates is a different matter.  In Count IX of the FAC, Gural alleges that: (1) he was an employee of JCA Associates; (2) Norcross and Gallagher knew of Gural's relationship with JCA Associates; and (3) Norcross and Gallagher intentionally interfered with Gural's business relationship with JCA Associates causing Gural's "constructive discharge."  (FAC ¶¶ 186-88.)

Here, Gural has properly alleged a claim for tortious interference with contract or business relationship as the FAC contains allegations relating to all five elements of a tortious

interference claim.  See Lamorte, 167 N.J. at 305-06.  As an employee of JCA Associates, Gural certainly had a continuing economic relationship with JCA Associates and Gural was damaged when he was terminated (having to endure the loss of employment and claiming that he was unable to find employment in South Jersey as a project manager).  (FAC ¶ 202.)  Defendants, however, have failed to present evidence demonstrating that no genuine issue of material fact exists regarding Norcross and Gallagher's knowledge of Gural's employment, their role in Gural's discharge or whether it was reasonably probable that Gural's loss was a result of the interference of Norcross and Gallagher into the operations of JCA Associates.  The moving party bears the initial burden of showing that no genuine issue of material fact exists on these three elements of a tortious interference claim, regardless of the fact that Gural will ultimately bear the burden of persuasion at trial.  See Celotex Corp., 477 U.S. at 323. Here, Defendants Norcross and Gallagher have failed to satisfy this burden, and their motion for summary judgment as to Gural's claim of tortious interference with his employment will be denied.[25]

---

[25] The parties shall conclude discovery on the sole remaining claim in this matter (Count IX of the FAC) within forty-five days of the date of this Opinion and Order.  This shall include the taking of any and all remaining depositions.

### 3.   Civil Conspiracy Claims

Third, Defendants argue that Plaintiffs' civil conspiracy claims are without merit.  (Def.'s Rosenberg Br. at 65.)  Under New Jersey law, a civil conspiracy is:

> [A] combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage.

Banco Popular North America v. Gandi, 184 N.J. 177-78 (N.J. 2005); see also Eli Lilly & Co., 23 F. Supp. 2d at 496.  Because an action for civil conspiracy is a tort action, a plaintiff must point to "consequential damage to the rights of another, of which the overt act is the proximate cause." Eli Lilly & Co., 23 F. Supp. 2d at 496-97 (citing Board of Educ. of the City of Asbury Park v. Hoek, 66 N.J. Super. 231, 241 (App. Div. 1961)).

Defendants contend, there was no wrongful act or attempted wrongful act, nor was there any agreement between the Defendants and Gural to remove Rosenberg (nor was Rosenberg even removed from his position).  (Def.'s Rosenberg Br. at 65.)  The real issue here, however, is that Plaintiffs have failed to raise a material issue of fact that they have suffered any harm as a result of any actions of Defendants.   With respect to Gural, the only evidence Plaintiffs put forth regarding harm that Gural suffered are set forth in Gural's certification.  (Certification of John J. Gural, Pl.'s Opp. Br. at Ex. A.)  However, as

45

Defendants' counsel argued at oral argument, Gural's
certification fails to allege harms against him personally.
Rather, Gural alleges harms against the town of Palmyra (in the
form of grants from the New Jersey Department of Transportation
being held back, (see Gural Cert. ¶ 7)), his political campaigns
(see id. ¶ 5), his political allies (Robert Stewart was allegedly
fired as the auditor of the Township of Magnolia as retribution
(see id. ¶ 8)) and that he was not invited to various political
events and fund raisers and his political career was harmed (see
id. ¶ 9-10, 16-18.)  Nowhere in Gural's certification does he
present evidence that either his business, reputation or person
were harmed by Defendants' actions.  Moreover, as mentioned in
Section III.D.2 infra, the certification of Carl Mayer, on behalf
of Rosenberg, also fails to present a genuine issue of material
fact as to an tangible harm suffered by Rosenberg on account of
Defendants' alleged civil conspiracy.

### 4.   Gural's Claims for Intentional Infliction of Emotional Distress.

In the FAC, Gural brings a claim of intentional infliction
of emotional distress due to Defendants' "extreme and outrageous"
actions of Defendants wherein Gural "suffered emotional
distress."  (FAC ¶ 261-62.)  In their motion, Defendants argue
that Gural cannot maintain a cause of action for intentional
infliction of emotional distress because Gural has presented no
evidence that the distress suffered was severe, that he "sought

psychiatric treatment or had a condition that required
medication." (Def.'s Br. at 24.)

In New Jersey, a plaintiff states a claim for intentional
infliction of emotional distress if he alleges: (1) that the
defendant acted intentionally or recklessly; (2) that the
defendant's conduct was extreme and outrageous; (3) the
defendant's action was the proximate cause of the plaintiff's
emotional distress; and (4) that the plaintiff's distress was so
severe that no reasonable person would be expected to endure it.
See Buckley v. Trenton Sav. Fund Society, 111 N.J. 355, 369
(1988). With respect to whether a plaintiff's distress is so
severe that no reasonable person would be expected to endure it,
New Jersey courts have stated that mental distress such as
"aggravation, embarrassment, an unspecified number of headaches,
and the loss of sleep" is insufficient to sustain claim of
intentional infliction of emotional distress. Id. at 368. At
the summary judgment stage, a plaintiff must provide the court
with evidence of a severe emotional distress; without such
evidence of "interference with day-to-day activities" or an
indication of "a need for psychiatric counseling," summary
judgment must be granted in favor of the defendant. Harris v.
Middlesex County College, 353 N.J. Super. 31, 47 (App. Div.
2002)(citing Shelcusky v. Garjulio, 172 N.J. 185 (2002)).

Here, Gural has presented no evidence of any emotional

47

distress let alone severe emotional distress.  Even Gural's
certification submitted with Plaintiffs' brief in opposition to
Defendants' motion for summary judgment was devoid of any mention
of any distress he has suffered.  Thus, Gural has failed to raise
a genuine issue of material fact.  As such, this Court will grant
Defendants' motion as to Gural's claim of intentional infliction
of emotional distress.

### 5. Eleanor Gural's Claims for Loss of Consortium

Finally, the Court addresses Defendants' argument that
summary judgment is appropriate because Eleanor Gural cannot
maintain her claim for loss of consortium (Count XVIII).  (FAC ¶¶
266-67.)  Defendants argue that because Eleanor Gural cannot
recover damages for loss of consortium because John Gural's
injuries (if any) are economic and not physical.

Defendants are correct and summary judgment should be
granted with respect to Eleanor Gural's loss of consortium claim.
It is well settled that "[d]amages for loss of consortium are
derivative, and arise only where there is direct physical injury
to the other spouse." Oliver v. Raymark Indus., Inc., 799 F.2d 95
(3d Cir. 1986) (citing Rex v. Hutner, 26 N.J. 489, 492 (1958) and
Cappiello v. Ragen Precision Indus., Inc., 192 N.J. Super. 523,
532 (1984)); see also W. Prosser, et al. The Law of Torts § 125
(5th ed. 1984).  As this Court discussed in Section III.D.4,
supra, John Gural has failed to provide any evidence of a

48

physical injury or that he suffers any psychiatric disorder or emotional distress as a result of the Defendants' alleged actions.  Because John Gural has failed to demonstrate any physical injury, under New Jersey law, Eleanor Gural's claim for loss of consortium necessarily fails.

## IV.  DEFENDANTS' MOTION FOR ATTORNEY'S FEES AND SANCTION

All Defendants also move for attorney's fees and sanctions pursuant to Fed. R. Civ. P. 11.  Defendants assert that Plaintiff Gural's counsel violated Rule 11 by attempting to re-litigate the same facts alleged in Gural's complaint for relief under New Jersey's Conscientious Employee Protection Act.  Defendants also argue that Plaintiff Rosenberg violated Rule 11 by instituting this litigation after it became clear that the State of New Jersey would not issue any indictments stemming from the surrounding facts.

Rule 11, Fed. R. Civ. P.,[26] "imposes on counsel a duty to

---

[26]  Rule 11 provides, in relevant part:

**(b) Representations to Court.** By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances ... [that]

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of

look before leaping and may be seen as a litigation version of

the familiar railroad crossing admonition to 'stop, look, and

listen.'" Lieb v. Topstone Indus., 788 F.2d 151, 157 (3d Cir.

1986); Brunner v. Allied Signal, Inc., 198 F.R.D. 612, 616

(D.N.J. 2001).  In other words, Rule 11 requires that an attorney

who submits a complaint certify that it is not asserted for

improper purposes, such as delay or harassment, and that there is

a reasonable basis in fact and law for the claims made.  See

Carlino v. Gloucester City High Sch., 57 F. Supp.2d 1, 37 (D.N.J.

1999) (citing Napier v. Thirty or More Unidentified Federal

Agents, etc., 855 F.2d 1080, 1090 (3d Cir. 1988)).  Rule 11 is

---

existing law or the establishment of new law;
(3) the allegations and other factual contentions have
evidentiary support or, if specifically so identified, are
likely to have evidentiary support after a reasonable
opportunity for further investigation or discovery; . . .

**(c) Sanctions.** If, after notice and a reasonable opportunity to
respond, the court determines that subdivision (b) has been
violated, the court may, subject to the conditions stated below,
impose an appropriate sanction upon the attorneys, law firms, or
parties that have violated subdivision (b) or are responsible for
their violation.

(1) . . .

(A) **By Motion.**  A motion for sanctions under this rule
shall be made separately from other motions or requests
and shall describe the specific conduct alleged to
violate subdivision (b).  It shall be served as
provided in Rule 5, but shall not be filed with or
presented to the court unless, within 21 days after
service of the motion . . . the challenged . . . claim
. . . is not withdrawn or appropriately corrected. . .
.

intended to discourage the filing of frivolous, unsupported, or unreasonable claims.  See id.

The Third Circuit has written that "[t]he legal standard to be applied when evaluating conduct allegedly violative of Rule 11 is reasonableness under the circumstances." Ford Motor Co. v. Summit Motor Prod., Inc., 930 F.2d 277, 289 (3d Cir.)(citations omitted); Carlino, 57 F. Supp.2d at 37.  Reasonableness in the context of a Rule 11 inquiry has been defined as "an objective knowledge or belief at the time of the filing of a challenged paper that the claim was well grounded in law and fact." Id.; Clement v. Public Serv. Elec. & Gas Co., 198 F.R.D. 634, 637 (D.N.J. 2001).  Bad faith is not required for a Rule 11 violation, see Clement, 198 F.R.D. at 637 (citing Martin v. Brown, 63 F.3d 1252, 1264 (3d Cir. 1995)), and thus there can be no 'empty head, pure heart' justification for the filing of frivolous claims.  See Clement, 198 F.R.D. at 637 (quoting Fed. R. Civ. P. 11, adv. cmte. notes (1993)).

Defendants served the instant Rule 11 motion upon Plaintiffs on December 1, 2005, and filed the motion with the Court more than 21 days later, on December 22, 2005.  Plaintiffs did not withdraw the challenged claims against Defendants during the "safe harbor" period.  As discussed in footnote 10, in Section II, supra, Plaintiffs, however, did concede at oral argument that Plaintiff Gural's claim against Defendants JCA Associates,

Chudzinski and Neisser must be dismissed as barred by New Jersey's Entire Controversy Doctrine ("NJECD").

### A.    Rule 11 Motion Against Plaintiff Gural's Counsel

As discussed in Section III.B.3, supra, Defendants argue that Gural's claims are barred by the NJECD because he brought these same claims in a state court action under New Jersey's Conscientious Employee Protection Act in 2001.  According to Defendants, because Gural's claims are barred by the NJECD, Gural's counsel is subject to sanctions under Fed. R. Civ. P. 11 because Gural's claims are not "warranted by existing law" as Rule 11 requires.  See Reynolds v. U.S. Capitol Police Bd., 357 F. Supp.2d 19 (D.D.C. 2004).  According to Defendants, Gural's counsel was not only aware of Gural's prior state court litigation but had direct access to the state court complaint and essentially copied the state court complaint verbatim and merely refashioned Gural's claims for purposes of bringing this federal RICO claim.

Defendants have failed to show why sanctions are appropriate in this case.  While Plaintiff Gural's RICO claims against Norcross and Gallagher did not survive summary judgment, they were not doomed from the start or not "warranted by existing law" because of the NJECD as Defendants argue.  Indeed, this Court held supra that Gural's claims against Defendants Norcross and Gallagher were not barred by the NJECD.  Specifically, this Court

held <u>supra</u> that neither Norcross nor Gallagher qualified as
Gural's "employer" under CEPA and therefore Gural could not have
brought his 2001 action against them.   <u>See</u> N.J. Stat. Ann. 34:19-
2(a).   Accordingly, under <u>Holvey</u>, the NJECD does not bar Gural's
claim against Norcross and Gallagher because Gural could not have
brought a CEPA action against these defendants in 2001.   <u>Holvey</u>,
29 F.3d at 831.   Thus, Defendants' motion for attorney's fees and
sanctions against Gural's counsel will be denied.

### B.   <u>Rule 11 Motion Against Plaintiff Rosenberg</u>

Defendants also argue that this Court should sanction
Plaintiff Rosenberg because Rosenberg filed this action for
improper purposes in violation of Fed. R. Civ. P. 11(b)(1).   In
support of their position, Defendants argue that "Rosenberg
testified that the reason he filed this lawsuit against
[Defendant] Norcross was because it became clear to him that the
State was not going to indict [Norcross]" and that, in explaining
his decision to sue Norcross, Rosenberg failed to cite any
reasons that had to do with Rosenberg having suffered concrete
financial harm or loss of reputation due to the actions of
Defendants.   (Def.'s Br. for Sanctions at 8.)

Again, Defendants have failed to show that sanctions are
appropriate in this case.   This Court agrees with Defendants that
Rosenberg's motivation for bringing this lawsuit is an important
element in determining whether to award attorney's fees and

sanctions.   Indeed, Rule 11 states that a pleading must not be
"presented for an improper purpose, such as to harass or to cause
unnecessary delay or needless increase in the cost of
litigation."   Fed. R. Civ. P. 11(b)(1).   However, this Court does
not find the evidence Defendants present demonstrating
Rosenberg's improper motive to be persuasive.   Defendants argue
that Rosenberg's deposition testimony –- specifically his he
statement that he decided to sue Norcross after it became clear
that the State would not indict Norcross –- as evidence of his
improper motive.   (Rosenberg Dep. Tr. at 73.)   However, this
Court views this testimony only as simply a statement pertaining
to the time Rosenberg decided to bring this suit, not the
motivation for bringing the suit.   Simply because Rosenberg chose
this time to file suit does not, without more, mean that he had
an improper motive.   Rosenberg's legal and factual assertions
were not unreasonable, even though not meritorious in the end.
Thus, there is no evidence to suggest that Rosenberg brought this
action for improper purposes such as harassment or delay.   As
such, this Court will deny Defendants' motion for sanctions
against Rosenberg.

**V.**   **CONCLUSION**

For the reasons explained above, this Court will deny
Plaintiffs' request for a continuance and for additional
discovery under Rule 56(f) as Plaintiffs have failed to

54

demonstrate how additional discovery (e.g., depositions of
Defendants) would alter the outcome of Defendants' motions for
summary judgment as to the issue of economic harm, or why
Plaintiffs have failed to take advantage of the discovery process
overseen by Judge Donio.  As such, the Court finds that
Defendants' motions for summary judgment are not premature and
that this Court may now proceed with deciding these motions.

       With respect to the merits of Defendants' motions for
summary judgment, this Court will grant Defendants' motions for
summary judgment with respect to Plaintiffs' Federal RICO claims
(Counts II-V and X-XIII of the FAC) because neither Rosenberg or
Gural have demonstrated that they have suffered any cognizable
harm to their "business or property" as a Plaintiff is required
to show under the Federal RICO laws these claims will be
dismissed.  In addition, because Plaintiffs have failed to
present evidence raising a genuine issue of material fact related
to (1) Plaintiffs' state law claims of New Jersey RICO (Counts
VII and XV) and civil conspiracy claims (Counts VIII and XVII)
and Rosenberg's tortious interference with contract and business
relationships (Count I); (2) John Gural's claim of intentional
infliction of emotional distress (Count XVI), and (3) Eleanor
Gural's claim of loss of consortium (Count XVIII), the Court will
also grant Defendants' motion for summary judgment with respect
to these claims as well.  As such, these claims shall be

dismissed.  The Court will deny the motion of Defendants Norcross and Gallagher for summary judgment as to Gural's tortious interference with contract and business relationships (Count IX) and this claim will proceed, and all discovery upon this claim shall conclude within forty-five days hereof.

Finally, the Court will deny Defendants' motions for attorneys fees and sanctions, as neither the actions of Plaintiff Gural's counsel nor Rosenberg violate Rule 11.

The accompanying Order is entered.


**March 30, 2007**                      **s/ Jerome B. Simandle**
Date                                    JEROME B. SIMANDLE
                                        United States District Judge